IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tonatihu Aguilar, | No. CV-14-02513-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 10) and the Report and Recommendation ("R&R") (Doc. 46) issued by United States Magistrate Judge Bridget S. Bade on September 1, 2016. Petitioner has raised one claim for relief in the petition. (Doc. 10 at 3). His claim is based on the Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 2469 (2012), which held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." In two separate cases in the Maricopa County Superior Court in Phoenix, Arizona, CR 1997-009340 and CR 2002-006143, Petitioner was sentenced to life without possibility of parole after being convicted of first-degree murder.[1] Petitioner alleges the two natural life sentences for offenses he committed as a juvenile violate *Miller*, which has been made retroactive to cases that are otherwise final on direct review.

---

[1] Petitioner was also convicted of other offenses.

In the R&R, Judge Bade first determined that Petitioner exhausted state court remedies for his *Miller* claims. (Doc. 46 at 14). Because it was not entirely clear whether the state courts adjudicated Petitioner's claims on the merits, Judge Bade conducted a de novo review rather than apply the deferential standard of review set forth in 28 U.S.C. § 2254(d). (Doc. 46 at 15). Following that review, Judge Bade concluded that Petitioner is not entitled to habeas corpus relief because the sentencing courts in his two cases complied with *Miller* by considering Petitioner's "youth and attendant characteristics" before imposing the life without parole sentences. (Doc. 46 at 16, 24, 28-29, and 30). Judge Bade therefore recommends the Petition be denied. (*Id.* at 30).

Petitioner, through counsel, filed Objections to the Report and Recommendation of the Magistrate Judge ("Objections") (Doc. 50) on October 4, 2016. Respondents then filed a Response to Objections to Report and Recommendation ("Response to Objections") (Doc. 51) on October 18, 2016. In addition, the parties jointly filed a Notice of Supplemental Authority (Doc. 52) on November 1, 2016. Respondent filed another Notice of Supplemental Authority (Doc. 53) on January 9, 2017.

**I. Background**

Magistrate Judge Bade provided a comprehensive summary of the factual and procedural background of this case in the R&R. (Doc. 46 at 2-9). The Court need not repeat that information here. Moreover, Petitioner has not objected to any of the information in the factual and procedural background section. *See Thomas v. Arn*, 474 U.S. 140, 149 (1989) (The relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all . . . of any issue that is not the subject of an objection."); *see also* Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

Petitioner does not object to Judge Bade's determination that even in the wake of the Supreme Court's decision in *Montgomery v. Louisiana,* 136 S.Ct. 718 (2016), Petitioner has exhausted state court remedies for the claim asserted in his habeas petition.

(Doc. 50 at 1). *Montgomery* held that *Miller* applies retroactively to cases that have already become final as a result of the conclusion of direct review. *Montgomery*, 136 S.Ct. at 734. In their Response to Objections, Respondents "clarify their position regarding exhaustion" but do not object to Judge Bade's determination on that issue. Respondents argue that if *Montgomery* expanded the holding in *Miller* by imposing new requirements (in addition to merely holding that *Miller* applies retroactively), then Petitioner did not exhaust his state court remedies because *Montgomery* had not yet been decided when Petitioner presented his *Miller* claim in state court. (Doc. 51 at 2). Respondents, however, take the position that *Montgomery* did not expand the holding in *Miller* and they assert that the R&R adopts that same position. Consequently, because neither side objects to Judge Bade's decision that Petitioner exhausted his state court remedies, this Court will not review that decision. *See Arn*, 474 U.S. at 149; Fed.R.Civ.P. 72(b)(3).

Likewise, this Court need not review Judge Bade's decision to conduct a *de novo* review rather than apply the deferential standard of review in 28 U.S.C. § 2254(d). Petitioner does not object to that decision. (Doc. 50 at 3). Respondents, on the other hand, assert that the deferential standard applies and that the R&R does not conclude otherwise. (Doc. 51 at 3). Respondents, however, do not object to Judge Bade's decision to conduct a *de novo* review. (*Id.*). The Court will therefore not review that decision. *See Arn*, 474 U.S. at 149; Fed.R.Civ.P. 72(b)(3).

**II. Legal Standards**

As noted above, the Supreme Court held in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 2469 (2012), "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* Although the *Miller* Court did not impose a "categorical bar on life without parole for juveniles," it explained that "we think appropriate occasion for sentencing juveniles to

this harshest possible penalty will be uncommon" because of the great difficulty distinguishing between "'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005) and *Graham v. Florida*, 560 U.S. 48, 68 (2010)). "Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. 460, 132 S.Ct. at 2469.

In *Montgomery v. Louisiana,* __ U.S. __, 136 S.Ct. 718, 734 (2016), the Supreme Court held that "*Miller* announced a substantive rule of constitutional law" and is therefore retroactive. In reaching this conclusion, the *Montgomery* Court explained that *Miller* "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Montgomery*, 136 S.Ct. at 734 (quoting *Miller*, 132 S.Ct. at 2465). "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." *Id.* (internal quotations and citations omitted). A sentence of life without parole for a juvenile is excessive except in the rare circumstances when the juvenile's crimes reflect permanent incorrigibility. *Id.*

However, as the *Montgomery* Court recognized, *Miller* did not impose a formal fact-finding requirement on the state trial courts. *Id.* at 735. "When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.*

**III. Standard of Review**

The district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

28 U.S.C. § 636(b)(1)(C); *see also* Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *U.S. v. Reyna-Tapia,* 328 F.3d 1114, 1121 (same). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3).

**IV. Analysis**

Here, Petitioner argues that Judge Bade erred in concluding that the requirements of *Miller* were satisfied when the sentencing judges in Petitioner's two cases considered Petitioner's "youth and attendant characteristics" before imposing life without parole sentences. Petitioner contends that "mere judicial consideration of 'youth and its attendant characteristics' is not sufficient to meet the demands of the Eighth Amendment." (Doc. 50 at 6). Petitioner argues that under *Miller*, before imposing a life without parole sentence, the judge must categorize a juvenile defendant and determine whether his crimes reflect unfortunate yet transient immaturity or irreparable corruption. (Doc. 50 at 5). Petitioner contends that Judge Bade "failed to explain how the sentencing judge in either case determined that [Petitioner's] crime did not reflect *transient* immaturity but instead *permanent* incorrigibility." (Doc. 50 at 4) (emphasis in original). Thus, according to Petitioner, Judge Bade failed to explain how the sentences comply with *Miller*.

Respondents argue in response that, as explained in *Montgomery*, *Miller* does not require trial courts to make specific factual findings regarding a juvenile defendant's incorrigibility. They claim that Petitioner's argument that more specific findings were required ignores this aspect of *Montgomery*. Respondents contend that the record amply shows the state trial courts gave extensive consideration to Petitioner's youth before imposing life without parole sentences against him. That extensive consideration, they argue, establishes compliance with *Miller*.

In the R&R, Judge Bade summarized at length the youth-related evidence presented at Petitioner's sentencing hearings. (Doc. 46 at 19-29). In the first case,

Petitioner presented testimony from legal experts who addressed the death penalty as applied to juvenile offenders.[2] The testimony included statements about how juveniles are less culpable than adults because their brains do not develop fully until their early 20s, they are impulsive, and they are less receptive to deterrence. (Doc. 46 at 19). According to the testimony, courts should consider a defendant's chronological age, youthfulness, and immaturity when sentencing a juvenile offender. (*Id.*). Petitioner also presented testimony from three other witnesses – a neuropsychologist, a psychologist, and a mitigation specialist – who testified about Petitioner's specific circumstances, including his age, intellectual development, mental health, family and home environment, his peers, and the circumstances of the offense. (Doc. 46 at 19-24). The record reflects that the trial court judge considered this evidence and defense counsels' arguments regarding Petitioner's age, intellectual development and maturity as mitigating factors before imposing a sentence of life without parole. (Doc. 46 at 23-24).

In the second case, Petitioner was initially sentenced to death for the first-degree murder conviction. After the Supreme Court held in *Roper v. Simmons*, 543 U.S. 551 (2005), that the Eighth Amendment bars the execution of juvenile offenders, Petitioner's case was remanded to determine whether Petitioner should be sentenced to natural life or life with a possibility of parole. (Doc. 46 at 25). Upon remand, Petitioner again presented substantial mitigating evidence pertaining to his youth. Among other evidence, a neuropsychologist testified about brain function and development, and determined based on his review of Petitioner's case that several factors may have affected the development of Petitioner's brain. (Doc. 46 at 25-28). The record shows that the trial court judge considered the mitigating evidence that was presented along with defense counsels' arguments that Petitioner's age, immaturity, and impulsivity supported a lesser sentence. As Judge Bade found, "the record reflects that the trial court considered Petitioner's 'youth and attendant characteristics' before imposing a sentence of life

---

[2] At that time, death was among the sentences being considered by the trial court as punishment for Petitioner's first degree murder conviction.

imprisonment without parole," though the trial court did not make factual findings pertaining to the specific factors identified in *Miller* and reiterated in *Montgomery*. (Doc. 46 at 28).

Petitioner does not object to Judge Bade's factual summary of Petitioner's sentencing hearings including the evidence presented, the arguments made, and the trial court judges' decisions. Rather, Petitioner objects to Judge Bade's legal conclusion – that although *Miller* requires a sentencing judge to consider a juvenile offender's youth and attendant characteristics before deciding that life without parole is a proper sentence, "failure to make specific factual findings [regarding those considerations] does not run afoul of *Miller*." (Doc. 46 at 28-29). After conducting its own *de novo* review, this Court agrees with Judge Bade's conclusion. Petitioner has not demonstrated to the Court's satisfaction that *Miller* or *Montgomery* requires specific factual findings that address the considerations set forth in *Miller*.

Petitioner's sentencing hearings in the two cases for which he received sentences of life without parole occurred in 2001 and 2005. (Doc. 46 at 3, 6). *Miller* was decided in 2012. *Montgomery* was decided in 2016. Thus, it should come as no surprise that the sentencing judges in Petitioner's cases did not specifically address the distinction highlighted in *Miller* between "transient immaturity" and "permanent incorrigibility." Indeed, Petitioner acknowledges that even if the sentencing judges in this case had the benefit of *Miller*, the decision does not require sentencing judges to "intone the magic words 'permanent incorrigibility' or 'irreparable corruption' before imposing a life without parole sentence." (Doc. 50 at 2). Petitioner claims, however, that the sentencing judges were required to not only consider these concepts, they were also required to explain on the record how Petitioner's crimes showed permanent incorrigibility or irreparable corruption before imposing life without parole sentences. (Doc. 50 at 2, 6). But Petitioner points to nothing in *Miller* or *Montgomery* that calls for on the record explanations of sentencing judges' findings. To the contrary, *Montgomery* addressed this issue and recognized that *Miller* did not impose a formal fact-finding requirement on the

state trial courts so as to avoid interfering with the States' administration of their criminal justice system. *Montgomery*, 136 S.Ct. at 735. This Court therefore declines to interpret *Miller* to require a sentencing judge to make formal findings of fact regarding a juvenile offender's youth and attendant characteristics before imposing a life without parole sentence.

Moreover, this Court's reading of *Miller* is consistent with the Ninth Circuit's decision in *Bell v. Uribe*, 748 F.3d 857, 869 (9th Cir. 2014). As in this case, the defendant in *Bell* "was not sentenced to life without the possibility of parole pursuant to a mandatory sentencing scheme that did not afford the sentencing judge discretion to consider the specific circumstances of the offender and the offense." *Id.* The record reflected in *Bell*, as it does here, that the sentencing judge made an individualized sentencing determination and imposed a sentence of life without the possibility of parole. *Id.* The Ninth Circuit explained:

> Even though the face of [the applicable California sentencing statute] affords a sentencing judge discretion to impose a sentence of 25 years to life imprisonment in recognition that some youthful offenders might warrant more lenient treatment, the court concluded that such mercy was not warranted in the present case. Because the sentencing judge did consider both mitigating and aggravating factors under a sentencing scheme that affords discretion and leniency, there is no violation of *Miller*.

*Bell*. 748 F.3d at 870. The Court did not require specific factual findings addressing the considerations set forth in *Miller*. *See id.*

The record in this case also shows that the sentencing judges in Petitioner's cases considered mitigating and aggravating factors, including Petitioner's youth and attendant characteristics, under a sentencing scheme that afforded discretion and leniency. Consequently, this Court finds no violation of *Miller*.

**V. Conclusion**

For the foregoing reasons, and after conducting its own de novo review, the Court reaches the same conclusion as Magistrate Judge Bade and finds Petitioner has not shown that his life without parole sentences violated the rule announced in *Miller*. Petitioner's

habeas petition must therefore be denied.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Bade's R&R (Doc. 46) is **accepted** and **adopted**. Petitioner's Objections (Doc. 50) are overruled.

**IT IS FURTHER ORDERED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 10) is **denied** and **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **granted** because jurists of reason could find this Court's ruling debatable.

**IT IS FINALLY ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

**Dated** this 16th day of May, 2017.

Honorable Diane J. Humetewa
United States District Judge